**Steven O'DELL, et al., Plaintiffs,**

v.

**HERCULES INC., et al., Defendants,**

**Ruby BRIDGES, et al., Plaintiffs,**

v.

**HERCULES INC., et al., Defendants.**

**No. LR–C–86–435.**

United States District Court,
E.D. Arkansas, W.D.

June 15, 1988.

R. David Lewis, Philip McMath, Little Rock, Ark., Gary Davis, Knoxville, Tenn., for plaintiffs.

W. Gordon Hamlin, Eugene Partain, Atlanta, Ga., Ron May, Little Rock, Ark., for defendants.

## ORDER

CARL B. RUBIN, Chief Judge, Sitting by Designation.

This matter is before the Court upon motions for a new trial by both the Bridges plaintiffs (doc. no. 177) and the O'Dell plaintiffs (doc. no. 179) pursuant to Federal Rule of Civil Procedure 59. These motions have been opposed and supported with respective memoranda (doc. nos. 178, 180, 181, 182, 183, 184).

Plaintiffs submit the following reasons as the bases of their motions for new trial:

1) The jury verdict was against the preponderance of the evidence and is a miscarriage of justice;

2) The admission of evidence concerning plaintiff Mr. Steven O'Dell's use of controlled substances was prejudicial error;

3) Evidence of the O'Dell plaintiffs exposure to dioxin and other toxic chemicals was excluded from trial and such exclusion was prejudicial; and

4) Evidence concerning remedial measures affecting the plant site was excluded from trial and such exclusion was prejudicial.

Initially all plaintiffs submit as the bases of their motion for new trial that the jury verdict was against the preponderance of the evidence and is further a miscarriage of justice. The proper standard for a motion for a new trial on the ground that the

verdict is against the weight of the evidence is well established in the United States Court of Appeals for the Eighth Circuit. In determining whether a new trial is in order, such a motion should only be granted when the verdict is against the "clear weight, overwhelming weight, or great weight of the evidence." *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 189 (8th Cir.1987); *Cole v. Williams*, 798 F.2d 280, 282 (8th Cir.1986); *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 416 (8th Cir.1985). "When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the Court may order a new trial, otherwise [the Court may] not." *Cole*, 798 F.2d at 282; *McBryde*, 819 F.2d at 189; *Diamond Shamrock*, 767 F.2d at 415; *Fireman's Fund Insurance Co. v. AALCO Wrecking Co., Inc.*, 466 F.2d 179, 187 (8th Cir.1972) *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). Furthermore, a motion for new trial is committed to the sound discretion of the trial Court. *McGee v. Hester*, 815 F.2d 1193, 1197 (8th Cir.1987) *cert. denied*, — U.S. —, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987); *Ryko Mfg. Co. v. Eden Services*, 823 F.2d 1215 (8th Cir.1987) *cert. denied*, — U.S. —, 108 S.Ct. 751, 98 L.Ed.2d 763 (1987).

This Court has exhaustively reviewed the evidence presented during this eleven day trial. A recitation of such evidence is unnecessary. The Court observes, however, that sufficient evidence was presented to support the jury's verdict in favor of the defendant. Thus, in accordance with the foregoing standard, this Court finds that a jury verdict rendered in favor of defendant Hercules Inc. is not against the clear, overwhelming or great weight of the evidence.

■ Second, plaintiffs argue that a new trial should be granted because the admission of evidence concerning Mr. Steven O'Dell's use of controlled substances was prejudicial error. (Doc. nos. 178, 180).[1]

Plaintiffs first point of contention is that Mr. O'Dell's use of controlled substances was not relevant to any issue at this trial; i.e., whether defendant created a risk of harm by releasing hazardous chemicals and whether releasing those chemicals was negligence (doc. nos. 178, 180). Conversely, defendant Hercules submits that this testimony was relevant to the question of ultrahazardous activity (or risk of serious harm).[2] Defendant further suggests that the risk of harm of prolonged exposure to "TCDD" around the plant site is relevant to the much less hazardous use of controlled substances. In addition, there arises the collateral issue of the voluntary or involuntary encountering of a serious risk of harm.

In light of these issues, the decision to admit or exclude evidence is within the sound discretion of the trial Court. *Green v. American Airlines*, 804 F.2d 453 (8th Cir.1986). Any ruling by the trial Court must take into account all matters pending before the Court at the time of such ruling. This Court finds that the very carefully controlled and closely scrutinized inquiry into Mr. O'Dell's use of controlled substances was indeed relevant to the plaintiffs claims with respect to the issues that were presented to the Court. Thus this Court is not persuaded by plaintiffs' argument.

Plaintiffs' second point of prejudicial error is that Mr. O'Dell's use of controlled substances was not properly admissible for impeachment purposes. Defendant Hercules emphasizes that Mr. O'Dell was not cross examined concerning his drug use in order to impeach his credibility.

This Court notes that Mr. Steven O'Dell was called to testify as on cross examina-

---

1. The Court notes in passing that during the trial which extended from February 15, 1988 to February 29, 1988, twenty-seven witnesses were presented, sixteen by the plaintiffs, ten by the defendants and one by the plaintiffs in rebuttal. The appearance of Mr. Steven O'Dell, including a bench conference, covered five pages of transcript and consisted of five questions by counsel for the defendant on cross-examination and eleven questions by counsel for the plaintiff. Such testimony before the jury lasted from 2:20 p.m. to 2:30 p.m., on February 27, 1988. (See Tr. Wed. Feb. 24, 1988).

2. Plaintiffs withdrew their claim concerning ultrahazardous activities subsequent to Mr. Steven O'Dell's testimony.

tion by defendant Hercules. Prior to any interrogation, the Court requested an offer of proof as to the expected testimony of the witness. The obvious reason for this was to exclude *any* evidence of Mr. O'Dell's conviction for the purpose of impeachment. To the Court's satisfaction defendant Hercules submitted proposals of relevant lines of questioning. Therefore this Court finds that plaintiffs argument that the admission of Steven O'Dell's testimony for impeachment purposes was prejudicial is not well taken.

Plaintiffs' also suggest that the admission of evidence of the use of controlled substances was not probative but prejudicial to all plaintiffs. This Court responds by noting its specific efforts to bar any prejudicial information from the jury. Accordingly this Court finds that the testimony of Mr. Steven O'Dell was indeed probative to the issues pending before the Court at the time of trial.[3]

With respect to Mr. Steven O'Dell's testimony, the Bridges plaintiffs additionally argue that they were subjected to highly prejudicial testimony which was not relevant to their claims. Throughout the course of the proceedings this Court has been fully aware of the separate and distinct claims of all parties. In accordance with Arkansas Model Instruction 105, the Court instructed the jury that "there are numerous plaintiffs in the case, each of whose rights are separate and distinct. As the jury you will treat their claims as if they were separate suits, but so far as the instructions and evidence apply to each, they govern his or her case". By so instructing the jury this Court finds no prejudicial error to the Bridges plaintiffs by the admission of the use of controlled substances of Mr. Steven O'Dell.

▄ Next, the O'Dell plaintiffs assert that the Court erred in excluding evidence

at trial of the O'Dells exposure to dioxin and other toxic chemicals. Specifically, the O'Dell plaintiffs complain that the Court did not permit Mr. Paul O'Dell to testify about swimming in the cooling pond on the plant site, nor about the occasions on which Mr. O'Dell destroyed his clothing because it allegedly had become contaminated with chemicals. Because plaintiffs failed to establish a tie between these events and exposure to chemicals produced by Hercules, the Court properly excluded such evidence as irrelevant.

▄ The O'Dell plaintiffs also argue that Mr. Steven O'Dell should have been permitted to testify on redirect about eating fish caught in Lake Dupree where EPA officials had reported that fish in that lake contained high concentrations of dioxin. Such questions, however, were beyond the scope of redirect and therefore were properly excluded.

▄ Finally, both the O'Dell and the Bridges plaintiffs assert that the Court erred in excluding evidence of certain remedial measures ordered at the plant site and the landfills, and in addition erred in excluding evidence of the ranking on the "Superfund" list of these sites. Plaintiffs admit that, as a general rule, evidence of remedial action is inadmissible but argue a subsequent remedial measure is admissible when that measure was forced upon the party by a superior authority. *See, e.g. Herndon v. Seven Bar Flying Service, Inc.,* 716 F.2d 1322 (10th Cir.1983); *Rozier v. Ford Motor Co.,* 573 F.2d 1332 (5th Cir.1978). Moreover, plaintiffs argue that such remedial measures are admissible if they were instituted by a third party. *See, e.g., Farner v. Paccar, Inc.,* 562 F.2d 518 (8th Cir.1977), *Lolie v. Ohio Brass Company,* 502 F.2d 741 (7th Cir.1974). The current case, however, does not fit into either category. The plant site and the landfills

---

**3.** *See McBryde v. Carey Lumber Co.,* 819 F.2d 185 (8th Cir.1987). A question by counsel that improperly places prejudicial information before the jury "generally entitles the aggrieved party to a new trial." *Williams v. Mensey,* 785 F.2d 631, 637 (8th Cir.1986) (Williams), citing *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir.1975) (Harris). The trial court, how-

ever, has discretion in determining whether a question is so prejudicial as to require a new trial because "the trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *Williams,* 785 F.2d at 637, quoting *Harris,* 527 F.2d at 531.

in question have been included to be investigated for "Superfund" cleanup. Cleanup has not commenced. Introduction of this evidence is likely to be far more prejudicial than probative and thus was properly excluded. Similarly, ranking on the so-called "Superfund" list of the plant site was properly excluded as inherently prejudicial and of marginal relevance.

### Conclusion

Plaintiffs have failed to show that they are entitled to a new trial. There is sufficient evidence to support the jury's verdict in favor of defendant Hercules. The Court is unaware of any evidentiary ruling that constitutes prejudicial error.[4] Therefore, for the reasons stated above, the Court hereby denies the Motions for New Trial by the O'Dell plaintiffs and by the Bridges plaintiffs.

IT IS SO ORDERED.

---

4. In an unrelated matter Judge Albert Engel now Chief Judge of the United States Court of Appeals for the Sixth Circuit made the following cogent observation;

"[e]xperience teaches that while every additional day of trial increases the possibility of error, it correspondingly reduces the risk that any single error may have prejudicial effect upon the ultimate result."

*United States v. Avant,* No. 78–5345 6th Cir. Aug. 27, 1979 (unpublished).